

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4658
Re: What property, if any, of a
Production Credit Association
organized under the federal laws
is subject to ad valorem taxes.

We have received and considered your request for an opinion from this department. We quote from your request:

"The question has been submitted to this department as to whether a Production Credit Association organized under the Federal statutes is subject to ad valorem taxes. If so, what portion of its assets is subject to the ad valorem tax? Is its physical properties, such as office fixtures, other tangible properties owned outright by the Association or its assets that are taxable? Is its taxable stock taxable as is the stock of a State or National Bank?"

Subchapter IV of Chapter 7 of Title 12, U.S.C.A., provides for the establishment of Production Credit Corporations and Production Credit Associations.

Section 1131-1131o, inclusive, of Title 12, U.S.C.A., deals specifically with the creation, powers and duties of Production Credit Corporations.

Section 1131c, Title 12, U.S.C.A., authorizes such Production Credit Corporation to subscribe and pay for Class A stock in each Production Credit Association located in the district served by such corporation in an amount sufficient to maintain the amount of Class A stock held by it and other holders of Class A stock equal, as nearly as may be, to twenty per centum of the volume of loans made or to be made by said association. That statute further provides that the Production Credit Corporation may at any time require the association to retire and cancel stock held by the corporation in such association, if in the judgment of the corporation the association has resources available therefor.

Section 1131d, of Title 12, U.S.C.A., provides for the organization of Production Credit Associations.

Section 1131e, of said Title 12, U.S.C.A., relating to the capital stock of Production Credit Associations, provides as follows:

"The stock of such associations shall be divided into shares of $5 each; and there shall be two classes of such stock:  (1) Class A stock which is to be held by Production Credit Corporations, and which may be purchased and held by investors, and (2) class B stock which may be purchased only by farmer borrowers from the association and individuals eligible to become borrowers. Class B stock only shall be entitled to voting rights but each holder of such stock shall be entitled to no more than one vote.  No class B stock, or any interest therein or right to receive dividends thereon, shall be transferred by act of parties or operation of law except to another farmer borrower or an individual eligible to become a borrower, and then only with the approval of the directors of the association.  Each holder of class B stock, within two years after he has ceased to be a borrower, shall exchange such class B stock at the fair book value (not to exceed par) thereof, as determined by the association, for class A stock.  All stock shall share in dividend distributions without preference, but the directors of the association may, in their discretion, apply the amount of any dividend payable to a holder of class B stock to any indebtedness of such holder to the association.  Class A stock shall be preferred as to assets of the association upon liquidation. . . ."

Section 1131g, of Title 12, U.S.C.A., provides that each Production Credit Association shall, under such rules and regulations as may be prescribed by the Production Credit Corporation of the district with approval of the Governor of the Farm Credit Administration, invest its funds and make loans to farmers for general agricultural purposes in the manner therein provided.

Section 1131gg, of Title 12, U.S.C.A., provides that under certain conditions the Production Credit Association is authorized and empowered to make loans to farmers for the purpose of enabling them to make home alterations, repairs, and improvements, and to sell, discount, assign, or otherwise dispose of any loans made by them in the manner provided therein.

Subchapter VI, of Chapter 7 of Title 12, U.S.C.A., is entitled: "PROVISIONS COMMON TO PRODUCTION CREDIT CORPORATIONS, PRODUCTION CREDIT ASSOCIATIONS, REGIONAL AND CENTRAL BANKS FOR COOPERATIVES." Section 1138c, of said Subchapter VI, provides as follows:

"The Central Bank for Cooperatives, and the Production Credit Corporations, Production Credit Associations, and Banks for Cooperatives, organized under this chapter, and their obligations, shall be deemed to be instrumentalities of the United States, and as such, any and all notes, debentures, bonds, and other such obligations issued by such banks, associations, or corporations shall be exempt both as to principal and interest from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority. Such banks, associations, and corporations, their property, their franchises, capital, reserves, surplus, and other funds, and their income, shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority; except that any real property and any tangible personal property of such banks, associations, and corporations shall be subject to Federal, State, Territorial, and local taxation to the same extent as other similar property is taxed. The exemption provided herein shall not apply with respect to any Production Credit Association or its property or income after the stock held in it by the Production Credit Corporation has been retired, . . . ." (Underscoring ours)

We think that it is clear that Section 1138c, quoted above, clearly answers your questions, and that none of the property nor assets of a Production Credit Association are subject to the taxing power of this State except "that any real property and any tangible personal property of such . . . associations, . . . and corporations shall be subject to Federal, State, Territorial and local taxation to the same extent as other similar property taxed . . . ." We do believe, however, in view of the last sentence of said Section 1138c, quoted above, that the Congress has, either expressly or by implication, authorized the properties of a Production Credit Association to be taxed the same as other property subject to the jurisdiction of the taxing power of the State of Texas after the stock held in it by the Production Credit Corporation has been retired.

Honorable Geo. H. Sheppard, page 4


       Since there are no specific facts presented to us by you in your inquiry, we trust that the foregoing fully answers the questions submitted by you.

                Yours very truly

            ATTORNEY GENERAL OF TEXAS

By           *Harold McCracken*

               Harold McCracken
               Assistant

HMcC:AMM


APPROVED JUL 16, 1942

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN